# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 12-275 |
| | ) | |
| MONTE BLAIR | ) | |

## OPINION

DIAMOND, D.J.

On November 8, 2012, defendant Monte Blair ("defendant") was charged in a one-count indictment with possession of a firearm by a convicted felon on or about September 28, 2012, in violation of 18 U.S.C. §922(g)(1).

Defendant filed a Motion to Suppress Evidence Pursuant to Franks v. Delaware (Document No. 27 ) arguing that a Franks hearing should be held in this case because the affidavit in support of the warrant for his arrest contained factual averments that were deliberately false and/or made with reckless disregard for the truth. According to defendant, if the allegedly false statements are excised from the affidavit, probable cause did not exist to arrest him, thus all evidence obtained as a result of his arrest and the subsequent search of his person should be suppressed.

After considering defendant's motion, the government's response in opposition thereto (Document No. 32), and defendant's reply (Document No. 35), the court concludes defendant has not established that he is entitled to a Franks hearing. Accordingly, defendant's request for a Franks hearing and motion to suppress evidence will be denied.

I.  **Background**

The indictment in this case arises out of defendant's arrest on September 28, 2012, pursuant to an arrest warrant issued by a state magistrate judge. Defendant was accused in a criminal complaint supported by an affidavit of probable cause filed by Detective Scott Evans of the Pittsburgh Bureau of Police of three counts of aggravated assault, two counts of assault on a law enforcement officer, three counts of criminal attempt (homicide) and one count of carrying a firearm without a license. Defendant was searched incident to arrest and the police recovered a loaded firearm from his waistband. That firearm forms the basis of the one-count federal indictment against defendant, charging him with possession of a firearm by a convicted felon.

According to the affidavit of probable cause[1] submitted by Detective Evans, in the early morning hours of September 9, 2012, Pittsburgh Police Officers Christopher Kertis and Andrew Baker were on patrol in the Homewood section of the City when they heard and saw shots fired from a dark colored SUV at the intersection of Zenith and Fleury Ways. When the officers responded to the scene, the SUV drove directly at their vehicle. Officer Kertis exited his vehicle, heard the SUV accelerate and heard two or three gunshots. As the SUV came into Officer Kertis' view, he saw that the passenger side window was down and observed the driver of the SUV lean forward and to the side. The driver had a pistol in his hand and was firing at the officers. The officers returned fire and attempted to pursue the vehicle as it fled from the scene, but they eventually lost sight of it.

Approximately ten minutes later, police received a call regarding a man shot at nearby

---

[1] The affidavit of probable cause is included as Attachment 1 to defendant's "Declaration in Support of his Motion to Suppress and Request for a Hearing Pursuant to Franks v. Delaware" (hereinafter, "defendant's Declaration"), which is attached to his Motion.

2

North Lang Avenue. The man, who was identified as Ronald Thornhill, was transported to the hospital with a gunshot wound to his right arm. Due to the proximity of time and location between the two shooting events, police believed they were related.

Detective Evans averred in the affidavit that Pittsburgh Police detectives interviewed Thornhill on September 10, 2012, at which time he confirmed that he was shot in the vicinity of Zenith and Fleury Ways. Thornhill saw a dark colored SUV pull up thirty to forty yards from his location and gunshots came from the vehicle. After suffering a gunshot would to his right arm, Thornhill ran to an address on North Lang Avenue.

In response to the detectives' inquiry regarding who shot him, Thornhill provided the name "Tay [short for Monte] Blair." Thornhill also explained that the dark-colored SUV looked like the vehicle Blair drives. Thornhill added that associates of his were feuding with Blair.

As set forth in a supplemental police report attached to defendant's Declaration, detectives interviewed Ronald Thornhill for a second time on September 18, 2012. During the interview, Thornhill again stated his belief that defendant was involved in the shooting. Thornhill further stated that he heard from several sources that defendant was shot in the arm by the police during the incident and that his arm was "swollen like a football."

According to Detective Evans' affidavit, on September 27, 2012, Officer Kertis was shown an eight-man photo array that included a photograph of defendant. Officer Kertis was told that individuals involved in the shooting incident may or may not be in the array. Officer Kertis pointed to defendant's photo and identified him as the driver of the SUV who shot at him on the night of the incident.

Based on the information set forth in the affidavit of probable cause, a warrant was issued

3

for defendant's arrest. When defendant was arrested and searched on September 28, 2012, a loaded pistol was found in his waistband, which forms the basis of the federal indictment charging him with possession of a firearm by a convicted felon.[2] According to the government's response, after defendant was advised of his Miranda rights, he made statements acknowledging his possession of the firearm.

According to several supplemental police reports attached to defendant's Declaration, on October 24, 2012, when Ronald Thornhill reviewed the reports of his two prior interviews with the police, he recanted his statements identifying defendant as the person who shot him. Defendant also attached to his Declaration a signed statement by Thornhill dated December 10, 2012, indicating that he "never stated to detectives . . . that Monte Blair shot me. I told them I didn't know who shot me."

## II. Motion to Suppress Evidence Pursuant to *Franks v. Delaware*

Defendant argues that he is entitled to a Franks hearing because Detective Evans' affidavit of probable cause supporting the arrest warrant contained factual averments that were deliberately false and/or made with reckless disregard for the truth regarding the following: (1) the allegation that Ronald Thornhill identified defendant as the shooter; (2) the allegation that defendant fired shots at Pittsburgh Police officers; and, (3) the tainted photo array shown to Officer Kertis and Officer Kertis' identification of defendant. See defendant's Motion, ¶¶7.a.-7.d.; defendant's Declaration, ¶12. Defendant contends that when the alleged false statements are excised from the

---

[2]The shooting incident which occurred on September 9, 2012, is being prosecuted in the Court of Common Pleas of Allegheny County, Pennsylvania.

4

affidavit, probable cause does not exist that he committed the crimes which were charged by the Pittsburgh Police. Accordingly, defendant asserts that all evidence seized when he was arrested on September 28, 2012, and any statements he made to the police, should be suppressed.

The government responds that defendant's motion to suppress should be denied without holding a Franks hearing because the police did not even need a warrant to arrest him, as a warrantless arrest may be effectuated based upon probable cause when the offense is felony. The government further argues that defendant has failed to make the preliminary showing required by Franks to trigger his right to a hearing.

### A.    Legal Standard

The rule governing situations involving allegedly misleading search warrant affidavits was articulated by the Supreme Court in Franks v. Delaware, 438 U.S. 154 (1978). Pursuant to Franks, upon an appropriate showing, a defendant has the right to an evidentiary hearing to challenge the truthfulness of statements made in a search warrant affidavit establishing probable cause. Id. at 155-56. The Third Circuit has extended this right to cases such as this one involving a defendant's challenge to an affidavit in support of an arrest warrant. See United States v. Carter, 756 F.2d 310, 313 (3d Cir. 1985).

To establish that a hearing is warranted, Franks requires the defendant to make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly and intentionally or with reckless disregard for the truth, and which is necessary to the finding of probable cause. Franks, 438 U.S. at 155-56, 171. In order to make the substantial preliminary showing, the defendant cannot rest on mere conclusory allegations or a "mere desire to cross-examine," but rather must specifically identify the alleged false statements or omissions in

5

the affidavit and present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses. Id. at 171; see also United States v. Yusef, 461 F.3d 374, 383 n.8 (3d Cir. 2006).

Statements or assertions contained in an affidavit of probable cause are "made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (quoting, United States v. Clapp, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). Omissions from an affidavit are made with reckless disregard for the truth when an officer withholds a facts that any reasonable person would know that a judge would want to know. Wilson, 212 F.3d at 783. A district court "may properly infer that an affiant acted with reckless disregard for the truth where his affidavit contains an averment that was without sufficient basis at the time he drafted it." United States v. Brown, 631 F.3d 638, 649 (3d Cir. 2011). However, when attempting to demonstrate that the affiant included a false statement in a warrant affidavit or omitted a material from it, it is insufficient to prove that he acted with negligence or made an innocent mistake. Franks, 438 U.S. at 171; Yusef, 461 F.3d at 383.

Finally, if the requirements of the substantial preliminary showing "are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Franks, 438 U.S. at 171-72. However, if the remaining content is insufficient, the defendant is entitled to a hearing.³ Id. at 172. In consideration of these principles, defendant is not

---

³If a Franks hearing is held, and the defendant proves by a preponderance of the evidence that the false statements or omissions were made knowingly and intentionally or with a reckless disregard for the truth, and with the affidavit's false material set aside, the remaining content is insufficient (continued ...)

6

entitled to a Franks hearing in this case for the reasons which we explain below.

### B. Defendant has not established he is entitled to a *Franks* hearing

Defendant is not entitled to a Frank hearing for two reasons. As an initial matter, defendant is challenging the validity of an arrest warrant that the police were not required to obtain to lawfully arrest him. Even if that were not the case, however, defendant has failed to make the substantial preliminary showing required by Franks to obtain a hearing.

#### 1. No warrant was required to arrest defendant

As the government correctly observed in its response, defendant is challenging the validity of the affidavit supporting the warrant for his arrest even though the police were not required to obtain a warrant to arrest him for the various felony offenses he was charged with under Pennsylvania law. According to Rule 502(2)(b) of the Pennsylvania Rules of Criminal Procedure, a criminal proceeding may "be instituted by . . . an arrest without a warrant" if there is probable cause to believe that an individual has committed a felony. This rule is consistent with long-established federal precedent holding that the police "may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony . . . ." Carroll v. United States, 267 U.S. 132, 156 (1925); see also United States v. Watson, 423 U.S. 411, 417 (1976) (holding that a warrant is not required to make an arrest for a felony if probable cause exists). As the Third Circuit has explained, "[t]he Fourth Amendment permits a felony arrest without a warrant based on probable cause, which is established when an officer has an objectively reasonable ground for belief in a suspect's guilt based on the totality of the circumstances prior to the arrest." United

---

to establish probable cause, then the warrant must be voided and the fruits of the search must be excluded from the trial. Franks, 438 U.S. at 156; see also United States v. Frost, 999 F.2d 737, 743 (3d Cir. 1993).

7

States v. Johnson, 515 Fed. Appx. 183, 186 (3d Cir. 2013) (citations omitted). In this case, defendant's arrest for the various felony offenses he was charged with committing in violation of Pennsylvania law was based on probable cause because Officer Kertis identified him from a photo array as the individual who fired shots at him while driving the dark-colored SUV.

Although defendant critiques the composition of the photo array and argues that Officer Kertis' identification of him is "intentionally false or made in reckless disregard for the truth," see defendant's Declaration, ¶ 26, his argument misses the mark. Defendant attempts to frame his critique of the photo array and Officer Kertis' identification of him as a Franks issue, but those are credibility matters that he may challenge in his state court trial if he chooses. Accordingly, to the extent defendant challenges the composition of the photo array, and the reliability of the identification procedure, those issues in no way establish that he is entitled to a Franks hearing.

### 2. Defendant has not made the substantial preliminary showing required by *Franks* to obtain a hearing

Even assuming a warrant was required to arrest defendant, he has not made the requisite substantial preliminary showing necessary to obtain a Franks hearing. As previously discussed, in order to obtain a Franks hearing, the defendant must make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly and intentionally or with reckless disregard for the truth, and which is necessary to the finding of probable cause. Franks, 438 U.S. at 155-56, 171. To make the substantial preliminary showing, the defendant must specifically identify the alleged false statements or omissions in the affidavit and present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses. Id. at 171.

The court notes that while defendant has identified certain statements in Detective Evans'

AO 72
(Rev. 8/82)

affidavit that he contends are false, and has attempted to contradict the affidavit by submitting his own sworn Declaration, along with various police reports and other documents, the court finds that the assertions and arguments set forth in his Declaration do not establish that Detective Evans made false statements knowingly and intentionally or with reckless disregard for the truth.

Defendant primarily contends Detective Evans' averment in the affidavit concerning Ronald Thornhill's identification of him as the shooter was knowingly false. Police reports attached to defendant's Declaration indicate that detectives interviewed Thornhill on September 10, 2012, and again on September 18, 2012. In response to the detectives' inquiry during the first interview if he knew who shot him, Thornhill identified "Tay [short for Monte] Blair." Thornhill also indicated that the dark-colored SUV looked like the vehicle defendant drives. Thornhill again stated his belief at the second interview that defendant was involved in the shooting. Detective Evans subsequently relied on the reports of the interviews with Thornhill by averring in the September 28, 2012, affidavit that Thornhill identified defendant as the person who shot him.

On October 24, 2012, Thornhill recanted his statements implicating defendant as the shooter. Nonetheless, Detective Evans properly relied on Thornhill's original statements contained in the police reports of the interviews conducted in September, 2012, when he drafted the affidavit. A district court "may properly infer that an affiant acted with reckless disregard for the truth where his affidavit contains an averment that was without sufficient basis at the time he drafted it." Brown, 631 F.3d at 649. Here, no such inference can be made because Detective Evans' averment concerning Thornhill's identification of defendant was based on Thornhill's two interviews with detectives which occurred before Detective Evans drafted the affidavit. Detective Evans had no reason to "have entertained serious doubts as to the truth of his statements or had obvious reasons

9

to doubt the accuracy of the information" he received and relied upon from fellow detectives. See Wilson 212 F.3d at 788. Thornhill's subsequent decision to recant his statements does not establish that Detective Evans knowingly and intentionally or with reckless disregard for the truth included false information in the affidavit.

We further note that defendant's assertions in his Declaration do not otherwise establish that Detective Evans knowingly and intentionally or with reckless disregard for the truth made false statements in the affidavit. Rather, defendant's assertions in his Declaration may challenge the credibility of the witnesses in his state court case, but those assertions do not make the requisite substantial preliminary showing necessary to obtain a Franks hearing.

Finally, even if we were to excise from the affidavit the information that Ronald Thornhill identified defendant as the person who shot him as being false or made with reckless disregard for the truth, "there remains sufficient content in the warrant affidavit to support a finding of probable cause," and thus "no hearing is required." Franks, 438 U.S. at 172. As previously discussed, Officer Kertis positively identified defendant from a photo array as the individual who fired shots at him from the dark colored SUV, and Detective Evans permissibly included that information in the affidavit.[4] For this reason, and those explained above, defendant is not entitled to a Franks hearing.

---

[4] Defendant also claims the allegation in the affidavit that defendant fired shots at Pittsburgh Police officers was knowingly false or made with reckless disregard for the truth. A police report dated September 9, 2012, of Officer Kertis' interview concerning the shooting incident is attached to defendant's Declaration. The report indicates that Officer Kertis observed the driver of the dark colored SUV fire shots at him. On September 27, 2012, Officer Kertis identified that individual as defendant from a photo array. Detective Evans properly included in the affidavit information from the report of Officer's Kertis interview with fellow detectives, as well as Officer Kertis' identification of defendant as the shooter, as he had no reason to doubt the accuracy of the information he received from his colleagues.

AO 72
(Rev. 8/82)

III. **Conclusion**

For the foregoing reasons, defendant's Motion to Suppress Evidence Pursuant to Franks v. Delaware will be denied. An appropriate order will follow.

*Gustave Diamond*
Gustave Diamond
United States District Judge

Date: October 10, 2013

cc: Charles A. Eberle
Assistant U.S. Attorney

Melvin L. Vatz, Esq.
Grossinger Gordon Vatz, LLP
1000 Law & Finance Building
Pittsburgh, PA 15219

11

AO 72
(Rev. 8/82)